## S97A0318. BRANTLEY v. THE STATE.
### (486 SE2d 169)

HINES, Justice.
Jeffrey David Brantley was convicted of two counts of malice murder and one count each of aggravated assault, burglary and a firearms possession charge in connection with the shootings of his ex-wife, her sister, and her mother. This Court affirmed Brantley's convictions, but reversed the death sentence imposed for the murder of Brantley's sister-in-law and remanded the case for resentencing. *Brantley v. State*, 262 Ga. 786 (427 SE2d 758) (1993). On remand, and with the express consent of the State, Brantley elected to be sentenced to life without parole for the murder of his former sister-in-law. See OCGA § 17-10-16 and Ga. L. 1993, p. 1654, § 7. Accordingly, Brantley was sentenced to life without parole, to be served consecutively to his sentences on the other charges. Brantley appeals the denial of his challenges to his resentence. For the reasons which follow, we uphold the imposition of life without parole.[1]

1. Brantley contends that the trial court erred in failing to set aside his sentence of life without parole because ineffective assistance of counsel rendered his acceptance of the sentencing agreement involuntary as a matter of law. He claims that he accepted the sentence in reliance on the inaccurate advice of his appellate attorneys

---

[1] The sentence on remand was imposed on June 7, 1994. On November 27, 1995, Brantley, pro se, filed a motion for out-of-time appeal from the sentence. The motion was granted on January 16, 1996. On January 23, 1996, Brantley, pro se, filed a motion for new trial also attacking the sentence. Brantley's appointed counsel filed a motion to set aside the sentence on August 14, 1996. On August 21, 1996, appointed counsel filed an amended motion for new trial seeking to set aside Brantley's sentence due to alleged ineffective assistance of counsel. Following an evidentiary hearing on August 21, 1996, the Superior Court of Burke County denied Brantley's motions for new trial and to set aside sentence on September 9, 1996. A notice of appeal was filed on October 4, 1996, and the appeal was docketed in this Court on November 18, 1996. The case was submitted for decision following oral argument on February 10, 1997.

regarding the constitutionality of the life-without-parole statute and his parole eligibility, and thus, he was denied his constitutional right to a new sentencing trial by jury.

Brantley's election to be sentenced to life without parole included his execution of a written acknowledgment of guilt for the murder of his former sister-in-law similar to a guilty plea statement.[2] In the context of guilty pleas, the two-prong test for establishing ineffective assistance of counsel enunciated in *Strickland v. Washington,* 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) employs a standard of objective reasonableness with regard to counsel's performance and requires that the defendant establish the reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Thompson v. Greene,* 265 Ga. 782, 784 (2) (462 SE2d 747) (1995), citing *Hill v. Lockhart,* 474 U. S. 52 (106 SC 366, 88 LE2d 203) (1985). Brantley cannot make the required showing.

Brantley was represented in the resentencing by appointed counsel Richard E. Allen, who was at the hearing in the matter and whose name appears as the sole attorney of record on the sentencing documents. At the hearing on Brantley's ineffectiveness of counsel claims, Allen testified that over a period of a couple of months prior to the sentencing, he had several conversations with Brantley about electing life without parole. Allen had talked with people in Burke County, and the consensus was that Brantley would again be sentenced to death. Allen related this to Brantley, and Brantley told Allen that he understood the situation and that a trial was "hopeless." Brantley considered the possibility of his death and ultimately agreed that he did not want to die. Accordingly, Allen negotiated for a life sentence without parole in order to save his client's life. No promises or threats were made to Brantley or to Allen. Allen was confident that Brantley understood the implications of the sentence and

---

[2] Prior to sentencing, Brantley executed an "Election of Defendant to be Sentenced to Life Without Parole" in which he affirmed that he understood the status of his case on remand, that the State had previously indicated its intention to seek the death penalty, and that, with the State's consent, he was electing imprisonment for life without parole. Brantley also executed a written "Acknowledgment of Defendant" in which he admitted, inter alia, that he committed the murder of his former sister-in-law while he was engaged in the murder of his ex-wife; that he understood that the State had indicated its intention to again seek the death penalty; that he understood that if he was sentenced to life without parole he would serve the remainder of his natural life in prison without the possibility of parole; that he was not under the influence of any drug, medicine, or alcohol; that he understood he had the right to trial by a jury but waived that right as to all issues; that he had the rights to have favorable witnesses testify and to question and cross-examine prosecution witnesses but waived such rights; that he understood had he elected to go to trial, he could have been sentenced to death or to life in prison with the possibility of parole; that no one had made him any promise or threat to cause his election; and that he was satisfied with his provided attorneys and had been informed of all of his rights and options.

elected it knowingly and voluntarily. Prior to the sentencing, Allen advised Brantley that the constitutionality of OCGA § 17-10-16 had been upheld. See *Freeman v. State*, 264 Ga. 27 (440 SE2d 181) (1994).

On the day of sentencing, but prior to entering into the sentencing agreement, Brantley unsuccessfully attempted to give the sentencing judge a letter in which Brantley stated: "If I want to stay alive, I have no choice. If I choose to be re-tried, I will once again receive the death sentence. I feel I have no choice, and my only option to stay alive is to accept a plea of life without parole." This evidence more than amply supports the conclusion that Brantley did not rely on inaccurate advice from Allen in electing imprisonment for life without parole.

Brantley is likewise unsuccessful in his claim of ineffective assistance of counsel in regard to attorneys Clive A. Stafford Smith and Steve Bayliss. Assuming arguendo that Stafford Smith and Bayliss afforded such aid to Brantley in the resentencing as to amount to assistance of counsel, their comments in correspondence regarding the life-without-parole statute and Brantley's possibility of parole do not constitute inadequate representation. The letters did not make any promises or guarantees of parole, and the evidence plainly shows that Brantley's decision did not turn on the attorneys' conjecture, rather Brantley knowingly opted for life in prison without the possibility of parole in order to spare himself.

2. Brantley fails in the claim that the application of OCGA § 17-10-16 to his case is violative of the ex post facto prohibitions of the State and Federal Constitutions. In general, a law is ex post facto if it inflicts upon the party being tried a greater punishment than the law annexed to the crime at the time it was committed or it alters the situation of the accused to his disadvantage. *Todd v. State*, 228 Ga. 746, 751 (187 SE2d 831) (1972). That is clearly not the case here. As Brantley acknowledges, he expressly elected the retrospective application of the statute, Ga. L. 1993, p. 1654, § 7, and we have determined that his election was freely and voluntarily made. See Division 1, supra. What is more, the statute did not establish a greater penalty or alter Brantley's situation to his disadvantage.[3] On the contrary, it allowed Brantley to choose life over what he perceived as certain death.

3. Brantley also fails in his contention that he was denied effective assistance of counsel because he was not afforded the opportunity to review and rebut victim impact statements pursuant to OCGA § 17-10-1.2. The failure to comply with the Code section does

---

[3] There is no factual support for Brantley's theory that he was or would have been eligible for parole prior to the resentencing.

not provide a basis for the invalidation of a sentence. OCGA § 17-10-1.2 (d). Moreover, Brantley can show no detriment. The documents were admitted into the record following the court's acceptance of Brantley's election to be sentenced to life without parole. Therefore, the court did not rely upon the victim impact statements in imposing punishment.

4. Lastly, Brantley cannot sustain the claim that the trial court ran afoul of *North Carolina v. Pearce*, 395 U. S. 711 (89 SC 2072, 23 LE2d 656) (1969) by resentencing him to a consecutive sentence of life without parole in the absence of a factual basis. Brantley's argument rests on the faulty premise that the resentence amounted to the imposition of greater punishment. This Court has implicitly recognized that there is no harsher penalty than death, see Division 2, and we reject the idea that a life-without-parole sentence, even though imposed consecutively, is more severe than a concurrent sentence of death. See *Thomas v. Newsome*, 821 F2d 1550 (11th Cir. 1987).

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 30, 1997.

*Garrett & Gilliard, Michael C. Garrett, Melissa S. Padgett,* for appellant.

*Dennis C. Sanders, District Attorney, from Toombs Circuit, M. Eric Eberhardt, Assistant District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General,* for appellee.